**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No.09-CV-00338-WJM-BNB

ROSSETTI ASSOCIATES, INC., a Michigan Corporation,

     Plaintiff,

v.

SANTA FE I25 DENVER, LLC, a Colorado Limited Liability Company;
JFA MANAGEMENT, LLC, an Illinois Limited Liability Company; and
JOSEPH FREED AND ASSOCIATES, LLC, an Illinois Limited Liability Company,

     Defendants.

---

**ORDER GRANTING IN PART
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

**INTRODUCTION**

     This dispute arises from a breach of contract.  Plaintiff Rossetti Associates, Inc.

("Rossetti) entered into a contract with Santa Fe 125 Denver, LLC ("Santa Fe") to

provide design services on the proposed Metropolitan Gardens project ("Metropolitan

Gardens" or "Project") at the old Gates Rubber Company site ("Property") in Denver,

Colorado.  (Compl. ¶ 17, ECF No. 1.)  Santa Fe is an entity created for the Project by

JFA Management, LLC ("JFA Management") and Joseph Freed and Associates, LLC

("JFA") (collectively "Freed Defendants").  (Def.'s Mot. Part. Summ. J. 3, ECF No. 68.)

When the real estate market and economy deteriorated in 2007, the Project was

abandoned and Rossetti was left holding unpaid invoices for the company's design

1

work.  (Pl.'s Resp. Def.'s Mot. Part. Summ. J. 4, ECF No. 69.)

This matter is before the Court on Plaintiff's Motion for Summary Judgment and Defendants' Motion for Partial Summary Judgment regarding Plaintiff's Complaint and Demand for Trial by Jury.  (Pl.'s Mot. Summ. J., ECF No. 67; ECF No. 68; ECF No. 1.) The motions are fully briefed and ripe for disposition.  The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on diversity jurisdiction.

## BACKGROUND

### I.  Factual Background

Unless otherwise noted, the following facts are not in dispute:  The Freed Defendants develop and operate mixed-use real estate properties across the United States.  (ECF No. 68 at 3.)  Rossetti likewise works in markets across the country, providing design services for commercial buildings and landscapes.  (ECF No. 69 at 2.) Rossetti designed JFA's headquarters in Chicago, Illinois and worked with JFA affiliates on a project similar to Metropolitan Gardens in Troy, Michigan.  (ECF No. 68 at 6-7.) Throughout this history, including the contracts for Metropolitan Gardens, JFA and its affiliates have paid Rossetti $2,719,565.19.  (ECF No. 68 at 8.)

In March 2006, the Freed Defendants formed Santa Fe.  (ECF No. 68 at 3.) Santa Fe was a single-purpose entity created solely to acquire, own, and develop Metropolitan Gardens.  (*Id.* at 2.)  Santa Fe initiated the Project by contracting for the purchase of the "West parcel" of the Property from Cherokee Denver, LLC ("Cherokee"). (*Id.* at 3.)  During these negotiations, Santa Fe and Cherokee determined that the "West" and "East" parcels of the Property should be developed together.  (*Id.*)  The

entities began negotiations to jointly own and develop both parcels under a joint venture.  (*Id.*)

While Santa Fe was in negotiations to purchase the East and West parcels of the Property, it began contracting with various entities in anticipation of the Project.  (ECF No. 68 at 4.)  Rossetti submitted a bid to JFA in January 2007, and won a contract to provide the planning and architectural design services for Metropolitan Gardens.  (ECF No. 69 at 3.)  Prior to submitting its bid and accepting the contract, Rossetti alleges that JFA indicated it was in a joint venture with Cherokee to own the Property.  (*Id.*)

JFA's procedure with all development entities such as Santa Fe is to have the entity open its own separate bank account and operate through that account.  (ECF No. 68 at 4.)  However, because Santa Fe and Cherokee never came to an agreement on the purchase of the Property, Santa Fe was not able to get the financing it wanted for the Project.  (*Id.*)  As a result,  Santa Fe operated on capital contributions and loans that were processed through JFA.  (*Id.*)  Santa Fe's bills were thus paid for from JFA accounts.  (*See id.*)

Rossetti worked exclusively with JFA representatives throughout the Project.  (ECF No. 69 at 2.)  Rossetti submitted its bid to JFA and met with and negotiated consultant agreements and change orders with JFA representatives.  (*Id.* at 3.)  All of the contracts were drafted by JFA.  (*Id.*)  Rossetti's invoices were sent to JF West, a Freed entity, and all of the checks were written by JFA.  (ECF No. 68 at 7.)  Additionally, Rossetti and other contractors met with JFA representatives on a weekly basis.  (ECF No. 69 at 3.)  JFA gave Rossetti approvals to the architectural designs it submitted and gave direction on the overall Project.  (*Id.*)

3

In November 2007, negotiations on the land purchase between Santa Fe and Cherokee reached an impasse.  (ECF No. 68 at 4.)  Santa Fe told its service providers, including Rossetti, to stop work on the Project.  (*Id.*)  Shortly thereafter Santa Fe stopped paying on vendor contracts still outstanding, and claims that it is not able to pay on these contracts.  (ECF No. 68 at 2; ECF No. 69 at 4.)  Santa Fe still owes Rossetti $679,713.83 under the contracts and is unable to pay.  (ECF No. 68 at 14.)  As a result, Rossetti brought a claim against Santa Fe and the Freed Defendants to recover economic loss.  (ECF No. 1.)

## II.    Procedural Background

On February 17, 2009 Rossetti filed this action against Santa Fe, JFA, JFA Management and Cherokee citing four claims for relief (1) breach of contract, (2) negligent misrepresentation, (3) account stated, and (4) unjust enrichment.  (ECF No. 1.) Cherokee answered the complaint.  (Answer, ECF No. 10.)  Santa Fe, JFA and JFA Management answered the complaint and filed cross-claims against Cherokee for, *inter alia*, contribution.  (Answer Cross-cl., ECF No. 25.)  Cherokee answered the cross-claims.  (Answer Countercl., ECF No. 30.)  At a pretrial conference between the parties on June 30, 2010, all claims against Cherokee and all claims by Cherokee were dismissed with prejudice.  (Minute Entry, ECF No. 57.)

During a pretrial conference on August 19, 2010, Santa Fe stipulated to consent to judgment against it and in Rossetti's favor in the amount of $679,713.83.  (ECF No. 68 at 14.)  On September 10, 2010, Rossetti filed a motion for summary judgment against JFA and JFA Management on the breach of contract claim, a motion for summary judgment against JFA on the unjust enrichment claim, and a motion for

4

summary judgment against Santa Fe, JFA, and JFA Management on the claim of negligent misrepresentation.  (ECF No. 67.)  Also on September 10, 2010, JFA and JFA Management filed a motion for partial summary judgment on the breach of contract, negligent misrepresentation, and unjust enrichment claims.  (ECF No. 68.)  Santa Fe also requested summary judgment on the negligent misrepresentation claim.  (*Id.*)  The parties have fully briefed these motions and they are now ripe for disposition.

## STANDARD OF REVIEW

The parties agree that the law of Colorado governs the substantive issues. Therefore, the law of Colorado will be applied to the contract and tort claims in this case.  *Cf. Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").  However, federal law governs procedural matters which include the standards for summary judgment.  *See Morris v. Travelers Indem. Co. of Am.*, 518 F.3d 755, 758 (10th Cir. 2008) ("In diversity cases, the laws of the forum state govern our analysis of the underlying claims, while federal law determines the propriety of the district court's summary judgment.").

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986).  A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense.  *In re Ribozyme Pharms., Inc. Sec. Litig.,* 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002).  By contrast, if the movant "does not bear the ultimate burden of

5

persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotations omitted).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. 56(e).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes,* 598 F.3d 708, 715 (10th Cir. 2010).  Furthermore, the Tenth Circuit has stated that, when parties have "file[d] cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotations omitted).

## DISCUSSION

## I.     Breach of Contract

In order to be successful on its breach of contract claim, Rossetti must establish, by a preponderance of the evidence, (1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract

by the defendant, and (4) resulting damages to the plaintiff.  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

Here, the parties agree that Defendant Santa Fe contracted with Rossetti for design services, that Rossetti performed under the contracts, that payment under the contracts is still due, and that this non-payment results in damages to Rossetti.  At issue is whether the Freed Defendants are parties to the contracts.

**A.**     ***Agents Within a Contract are not Liable Under the Contract***

Rossetti argues that the term "agent" as used in the contracts is ambiguous and should be construed to bring the Freed Defendants within the contracts as parties thereto.  However, a party who is acting as an agent for a principal is not liable on a contract when (1) it has authority to act, (2) it has given notice to the third party that there is a principal that he acts on behalf of, and (3) there is notice of the name or identity of the principal.  *Fink v. Montgomery Elevator Co. of Colo.*, 421 P.2d 735, 737 (Colo. 1966).

Here, Rossetti purportedly signed a series of contracts and change orders with Santa Fe whereby JFA "as agent" was the signatory on behalf of Santa Fe.  (ECF No. 69-8, 69-9.)  Within the terms of each of these agreements, except Change Order 1 to contract MG-016, Santa Fe is identified as owner of the Project/principal and JFA or JFA Management as "agent".  (ECF No. 69-8, 69-9.)  Because the Freed Defendants had authority to act on Santa Fe's behalf, and because Santa Fe is fully disclosed, the *Fink* case makes clear the Freed Defendants cannot as a matter of law be held liable under the contracts.

**B.      Ambiguity in Change Order 01 to Contract MG-016 is Not an Ambiguity as to the Contracts as a Whole**

Ambiguity in a contract exists where there is more than one reasonable interpretation of the meaning. *Union Ins. Co. v. Houtz*, 882 P.2d 1057, 1061 (Colo. 1994).  Where an actual ambiguity exists, the court evaluates the term according to the generally accepted meaning. *Id.*  Moreover, any ambiguity must be interpreted against the party drafting the contract. *U.S. Fidelity & Guar. Co. v. Budget Rent-a-Car Sys., Inc.*, 842 P.2d 208, 211 (Colo. 1992).

A court may turn to extrinsic evidence to determine the meaning of an ambiguity, though the use of parol evidence should only be used "when the agreement is so ambiguous that the intent of the parties is not clear." *Cheyenne Mountain Sch. Dist. #12 v. Thompson*, 861 P.2d 711, 715 (Colo. 1993).  ("In deciding whether a contract is ambiguous, a court 'may consider extrinsic evidence bearing upon the meaning of the written terms, such as . . . the circumstances surrounding the making of the contract.'" *KN Energy, Inc. v. Great W. Sugar Co.,* 698 P.2d 769, 777 (Colo.1985)).

Further, in interpreting an ambiguity, a court may not reform the agreement in order to create an intent contrary to that of the parties at the time of the agreement. *See Segelke v. Kilmer*, 360 P.2d 423, 426 (Colo. 1961).  The Colorado Supreme Court has held that "[t]here can be no reformation unless there is a preliminary or prior agreement, either written or verbal between the parties, furnishing the basis for rectification, or to which the instrument can be conformed." *Id.*

Here, Rossetti relies heavily on Change Order 01 of Contract MG-016 to argue

that there is an ambiguity as to the contracts as a whole.  (ECF No. 69 at 5.)  This Change Order fails to reference Santa Fe as owner of the Project and instead only names JFA at the top of the document and within the signature block instead of naming JFA as agent of Santa Fe.  (ECF No. 69-10.)  Here, the Court examines the full record of the contracts between the parties.  These contracts, read as a whole, lead this court to conclude that the ambiguity in this single change order does not render the contracts ambiguous in their entirety.  The Court finds that in the aggregate the contracts clearly identified JFA as an agent of Santa Fe.

**C.      *There is no Contract Between Rossetti and the Freed Defendants***

The interpretation of a contract is a matter of law.  *May v. United States*, 756 P.2d 362, 369 (Colo. 1988).  Where there is no ambiguity in the terms of the contract, the court is limited to only a review of the document in interpreting its contents.  *See id.*

Here, there are a series of contracts and change orders to the contracts.  In all but one of these documents, JFA Management or JFA is noted as an agent of Santa Fe.  (*See* ECF No. 69-9, 69-10.)  Throughout the documents, the use of the term "agent" is unambiguous and represents the Freed Defendants' role in the contracting process as agents of Santa Fe.  Further, Santa Fe is clearly noted at the beginning of the consultant agreement contracts as being the owner of the Project, and indicated as such in the signature block of the contracts.  (ECF No. 69-8.)  Similarly, the change order contracts indicate Santa Fe as owner of the Project.  (ECF No. 69-9.)  Based on a review of the four corners of the documents, and an interpretation of the term "agent" within those documents, this Court concludes the Freed Defendants are not parties to the contracts between Rossetti and Santa Fe.

9

Given the absence of any genuine factual dispute on the question, the Court grants, as a matter of law, the Freed Defendant's motion for summary judgment on the breach of contract claim.

**II.     Negligent Misrepresentation**

*A.     There Exists A Genuine Issue of Material Fact With Regard to Negligent Misrepresentation*

In order to be successful on this claim, Rossetti must establish, by a preponderance of the evidence, "that the defendant[s] supplied false information to others in a business transaction, and failed to exercise reasonable care or competence in obtaining or communicating information on which other parties justifiably relied." *Mehaffy, Rider, Windholz & Wilson v. Central Bank*, 892 P.2d 230, 236 (Colo. 1995) (citing *Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 919 (Colo. App. 1991)). Negligent misrepresentation is a tort that allows for a remedy when, for example, there is a misrepresentation in a transaction and money is lost.  *Id.*; *Keller v. A.O. Smith Harvestore Products, Inc.*, 819 P.2d 69, 72 (Colo. 1991) ("It is well established that in some circumstances a claim of negligent misrepresentation based on principles of tort law, independent of any principle of contract law, may be available to a party to a contract.").  Such an award is limited to the actual loss.  *Mehaffy*, 892 P.2d at 236.

The parol evidence rule that binds contract disputes is not here applicable. *Keller*, 819 P.2d at 72; *see also Lembke Plumbing & Heating v. Hayutin*, 366 P.2d 673, 675 (Colo. 1961).  Therefore, parties may bring in evidence of the alleged misrepresentation even though that evidence may be inadmissible to determine the

10

terms of the contract.

Here, Rossetti alleges that during discussions about the Project, JFA made representations that Santa Fe was in a joint venture agreement with Cherokee to own the Property.  (ECF No. 69 at 3.)  Rossetti further alleges that it relied on these representations in presenting its bid for services because Rossetti believed it would be able to place a mechanic's lien on the Property in case of unpaid fees.  (*Id.*)  Additionally, Rossetti argues that the term "owner" on each of the contracts between the parties indicated to Rossetti that Santa Fe was, in fact, the owner of the Property.  (ECF No. 67 at 6.)  The Defendants argue that the use of the term "owner" on the contract meant only owner of the Project, not owner of the Property, and was not meant to be relied on as such.  (Def.'s Resp. Opp'n Pl.'s Mot. Summ. J. 6, ECF No. 70.)  Because there is a genuine issue of material fact as to whether the Defendants misled Rossetti into believing Santa Fe was an owner in fact of the Property, and whether this false belief was in turn reasonably relied upon, this claim must be determined by a jury.

**B.    *Economic Loss Rule Defense Does Not Bar the Tort Claim***

The applicability of the economic loss rule is determined as a matter of law.  *See Registry Systems, Intern., Ltd. v. Hamm*, No. 08-cv-00495, 2010 U.S. Dist., 2010 WL 326327 *10 (D. Colo. Jan. 20, 2010) (unpublished) (citing *Carder, Inc. v. Cash*, 97 P.3d 174, 183 (Colo. App. 2003)).  Colorado's economic loss rule states that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."  *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000).  The

11

economic loss rule exists for three main policy reasons:

> (1) to maintain a distinction between contract and tort law; (2) to enforce
> expectancy interests of the parties so that they can reliably allocate risks and
> costs during their bargaining; and (3) to encourage the parties to build the cost
> considerations into the contract because they will not be able to recover
> economic damages in tort.

*BRW, Inc., v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004) (citing *Town of Alma*, 10

P.3d at 1262, 1264).   The dispositive question on this issue thus becomes whether the

breach of duty arises *under* the contract or *independent of* the contract.   *Town of Alma*,

10 P.3d at 1262 (citing *Tommy L. Griffin Plumbing & Heating Co. v. Jordan Jones &*

*Goulding, Inc.*, 320 S. Ct. 49, 463 (1995)).   *See also Brody v. Bock*, 897 P.2d 769, 776

(Colo. 1995) (fraud claim arising independently of contract); *Keller*, 819 P.2d at 73

(negligent misrepresentation).   It is this Court's role to determine the type of duty that

has allegedly been breached.   *Town of Alma*, 10 P.3d at 1263.

    In *Lembke Plumbing and Heating*, where a plumber's actions resulted in damage

to a home, the Colorado Supreme Court looked to the terms of the contract to

determine whether the duty of care came from within or independent of the contract.

366 P.2d at 675 (cited in *Town of Alma*, 10 P.3d at 1265).   The court found that the

contract between the parties "imposes no duty on [the defendant] to exercise due care

and caution and the necessary degree of skill involved in a plumbing installation . . . ."

*Id.* The court held that the duty breached was independent of the contract and not

barred by the economic loss rule.   *Id.*   Similarly, in *Keller*, a claim for negligent

misrepresentation was allowed to stand even though the contract specifically waived

liability based on representations made by the seller of feed silos.   *See Keller*, 819 P.2d

12

at 71-73. The court reasoned that "claims of negligent misrepresentation are based not on principles of contractual obligation but on principles of duty and reasonable conduct." *Id.* at 73.

Here, Rossetti is suing both Santa Fe and the Freed Defendants for negligent misrepresentation.  In reviewing the contracts between the parties, it is clear to this Court that a duty of care is not addressed by the parties in the contracting documents. (*See* ECF No. 69-8.)  While matters such as insurance and indemnification are addressed, there is no duty of care allocated or created by the contract.  (*Id.*)  As a matter of law the economic loss rule defense is therefore not here applicable and the claim of negligent misrepresentation must be presented to a jury.

## III.    Unjust Enrichment

Where there is an express contract covering the same subject matter, a party generally cannot recover under unjust enrichment.  *Interbank Investments, LLC, v. Eagle River Water and Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003).  Further, Colorado courts do not base their determination on the adequacy of the remedy under an express contract.  *Id.* at 818-19 ("If the threshold for judicial implication of a quasi-contract became the adequacy of the remedy under an express contract, rather than the enforceability of that contract, the outcome would be determinable only on a case-by-case basis, after all of the evidence had been presented, and without either predictability or precise standards.").

Here, Rossetti's contract with Santa Fe covers the same subject matter as addressed in the unjust enrichment claim.  Because there is an enforceable contract

13

between the two parties, the experess contract precludes the unjust enrichment claim as against Santa Fe and as against the Freed Defendants.

## IV.    Account Stated

The parties stipulate that Santa Fe and Rossetti entered into contracts for design services on the Metropolitan Gardens project and that Santa Fe still owes Rossetti $679,713.83.  (ECF No.  67 at 1; ECF No. 68 at 9.)  Moreover, the record shows that Santa Fe "consents to a judgment in Rossetti's favor" for this amount.  (ECF No. 68 at 9.)

## CONCLUSION

It is therefore **ORDERED** that plaintiff Rossetti's motion for summary judgment, ECF No. 67, and defendants Santa Fe, JFA, and JFA Management's motion for partial summary judgment, ECF No. 68, are GRANTED in part and DENIED in part as follows:

### *Breach of Contract Claim*

Rossetti's breach of contract claim against JFA and JFA Management is DISMISSED with prejudice.

### *Negligent Misrepresentation Claim*

Rossetti's negligent misrepresentation claim against Santa Fe, JFA, and JFA Management may proceed to a determination by the jury.

### *Unjust Enrichment*

Rossetti's unjust enrichment claim against Santa Fe, JFA and JFA Management is DISMISSED with prejudice.

14

***Account Stated***

Judgment against Santa Fe and in favor of Rossetti on Plaintiff's account stated

claim in the amount of $679,713.83 is ORDERED.

Dated this 4th day of March, 2011.

BY THE COURT:


s/ *William J. Martínez*
United States District Judge